Docket No. 10-56884

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

VIEN-PHUONG THI HO,
Plaintiff-Appellant

vs.

RECONTRUST COMPANY, N.A.,
subsidiaries of Bank of America, N.A.;
COUNTRYWIDE HOME LOANS INC.;
BANK OF AMERICA, N.A.,
Defendants-Appellees
_____

Appeal from the United States District Court
for the Central District of California
Hon. George H Wu, District Judge, Presiding
2:10-cv-00741-GW-SS
_____

# PETITION FOR PANEL REHEARING AND
# PETITION FOR EN BANC REVIEW
_____

Nicolette Glazer. Esq (CSB209713)
nicolette@glazerandglazer.com
LAW OFFICES OF LARRY R. GLAZER
1875 Century Park East, Suite #700
Century City, California 90067
Tel: (310) 407-5353
Fax: (310) 407-5354
PRO BONO ATTORNEY FOR PETITIONER

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

I.   FED. R. APP. P. 35(B) STATEMENT ........................................................ 1

II.  FACTUAL BACKGROUND ........................................................................ 4

    *A. The inflated debt Recon sought to collect* ....................................... 5

    *B. Ms. Ho's factual allegations* ............................................................ 6

III.  ARGUMENT ................................................................................................. 6

    A. Under §1692a(6) Recon is categorically a 'debt collector' subject to liability for violation of any substantive provision of the FDCPA ................. 6

    B. Mortgage obligations are covered within the definition of 'debt' in section §1692a(5) ............................................................................................. 7

    C. Foreclosing on a mortgage is conduct in connection with the collection of a debt. ........................................................................................................ 9

        *(1) California non-judicial foreclosure is an effort and/or a means to collect the underlying debt.* ............................................................................ 9

        *(2) Recon's Notice of Default and the NOTS are 'communications' in connection with the collection of a debt and/or a means to collect a debt.* .......... 10

    D. Adherence to federalism canon cannot abrogate Congressional enactment of federal minimum standards in the field of debt collection ...... 12

IV.  FED. R. APP. P. RULE 40 STATEMENT ................................................. 15

V.   CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Alaska Tr., LLC v. Ambridge,* 372 P3d 207 (Alaska 2016)......................................................... 10
*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226..........................................................9
*Bailey v. Hill*, 599 F.3d 976 (9th Cir., 2010)............................................................................... 15
*Cornelison v. Kornbluth* (1975) 15 Cal.3d 590...........................................................................10
*Dada v. Mukasey*, 554 U. S. 1 (2008)............................................................................................ 8
*Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85 (Ohio 2016)(..............................11
*Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985)............................................ 13
*Gburek v. Litton Loan Servicing LP,* 614 F.3d 380 (7th Cir.2010)................................................ 9
*Glazer v. Chase Home Fin. LLC*, 704 F.3d 453 (6th Cir.2013)......................................................3
*Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975)......................................................................... 13
*Heintz v. Jenkins*, 514 U.S. 291 (1995)............................................................................in passim
*Hillman v. Maretta*, 133 S. Ct. 1943 (2013).............................................................................. 12
*Ho v ReconTrust*, --F.3d-- (9th Cir. 2016).....................................................................in passim
*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605 (2010)......in passim
*Kaltenbach v. Richards*, 464 F.3d 524 (5th. Cir. 2006)................................................................ 3
*Kaymark ex rel. Current v. Bank of Am., N.A.*, 783 F.3d 168 (3rd Cir. 2015).............................2
*Kelton Arms Condominium Owners v. Homestead Ins.*, 346 F.3d 1190 (9th Cir., 2003)...........15
*Lopez v. United States*, 514 U.S. 549 (1995).............................................................................. 12
*McCray v. Fed. Home Loan Mortg. Corp.* 2016 WL 5864509 (4th Cir. 2016)............................2
Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119 (4th Cir. 2014).................................. 3
*Pratt v. Pratt, 1*21 Wash. 298 (Wash. 1922)...............................................................................10
*Reese v. Ellis, Painter, Ratterree & Adams* 678 F.3d 1211 (11th Cir. 2012)............................... 4
*Romea v. Heiberger & Associates*, 163 F.3d 111 (2nd Cir. 1998)................................................1
*Shapiro & Meinhold v. Zartman,* 823 P.2d 120 (Colo.1992)...................................................... 10
*Sheriff v. Gillie*, 136 S. Ct. 1594 (2016),...................................................................................14
*Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006).......................................2

**Statutes**

15 U.S.C. §1692a(5)........................................................................................................................7
15 U.S.C. §1692a(6).......................................................................................................................6
15 U.S.C. §1692(b)....................................................................................................................... 12
15 U.S.C. §1692(e)..................................................................................................................1, 13
15 U.S.C. §1692n........................................................................................................................ 13
Civ. Code 2909.............................................................................................................................10
Civ. Code 2910.............................................................................................................................10
Civ. Code 2924(a)........................................................................................................................ 10

**Other Authorities**

Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109351, §802(a),
120 Stat. 1966...............................................................................................................................9
Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, §2305(a),
110 Stat. 3009 (1996)....................................................................................................................9

## I.  FED. R. APP. P. 35(B) STATEMENT

This Petition seeks panel rehearing and rehearing *en banc* of a decision of exceptional importance that conflicts with the decisions of six other circuit courts of appeals and the U.S. Supreme Court's interpretation of the FDCPA in *Heintz v. Jenkins*, 514 U.S. 291 (1995) and *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605 (2010). The majority, relying on the principle of fidelity to the federalism canon, embraces a "plausible" interpretation of an "ambiguous" federal statute in order to avoid a conflict with state foreclosure law and concludes that "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA ." *See Ho v ReconTrust*, --F.3d-- (9th Cir. 2016).

Congress pronounced that "[i]t is the purpose of [the FDCPA] to eliminate abusive debt collection practices by debt collectors…and to promote consistent State action to protect consumers against debt collection abuses." *See* 15 U.S.C. §1692(e). Petitioner submits that the legislative history of the FDCPA, the statutory definition of the term 'debt collector' in §1692a(6), and the expressed purpose of the Act's remedial statutory scheme proscribe a reliance on the federalism canon to create an implied exception curbing application of the Act to a broad class of debt collectors. The majority's restrictive interpretation of the statutorily defined terms "debt" and "debt collector" and its holding that non-judicial foreclosure falls outside of the FDCPA's coverage conflicts with the views of all circuit courts that have addressed the issue:

*Romea v. Heiberger & Associates*, 163 F.3d 111 (2nd Cir. 1998)

1

>Heiberger argues that because its three-day notice was sent in connection with a possessory in rem action […], it is not a "communication" to collect a debt and therefore does not fall under the provisions of the FDCPA. […] Whatever else it was, the §711 letter that Heiberger sent to Romea was undeniably a "communication" as defined by the FDCPA in that it conveyed "information regarding a debt" to another person, id. §1692(a)(2). And Heiberger makes no attempt to deny that its aim in sending the letter was at least in part to induce Romea to pay the back rent she allegedly owed. As a result, the fact that the letter also served as a prerequisite to commencement of the Article 7 process is wholly irrelevant to the requirements and applicability of the FDCPA.

*Kaymark ex rel. Current v. Bank of Am., N.A.*, 783 F.3d 168 (3rd Cir. 2015)

>Udren's second argument is that foreclosure actions cannot be the basis of FDCPA claims… Nowhere does the FDCPA exclude foreclosure actions from its reach. On the contrary, foreclosure meets the broad definition of "debt collection" under the FDCPA, [...], and it is even contemplated in various places in the statute, *see, e.g.,* 15 U.S.C. §1692i (discussing procedures for "action[s] to enforce an interest in real property securing the consumer's obligation"). […] "[I]f a collector were able to avoid liability under the FDCPA simply by choosing to proceed *in rem* rather than *in personam,* it would undermine the purpose of the FDCPA." […] In any event, the prudence of maintaining parallel FDCPA claims is not ours to decide; it is Congress's, and its intent is clear for the reasons discussed. Absent a finding that "the result [will be] so absurd as to warrant implying an exemption for" FDCPA claims involving foreclosure actions, we are not empowered to disregard the plain language of the statute.

*Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006)

>Defendants contend that foreclosure by a trustee under a deed of trust is not the enforcement of an obligation to pay money or a "debt," but is a termination of the debtor's equity of redemption relating to the debtor's property. In essence, Defendants argue that Wilson's "debt" ceased to be a "debt" once foreclosure proceedings began. […] We disagree. Wilson's "debt" remained a "debt" even after foreclosure proceedings commenced. *See Piper v. Portnoff Law Assocs.,* 396 F.3d 227, 234 (3d Cir. 2005) ("The fact that the [Pennsylvania Municipal Claims and Tax Liens Act] provided a lien to secure the Pipers' debt does not change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt."). Furthermore, Defendants' actions surrounding the foreclosure proceeding were attempts to collect that debt.

*McCray v. Fed. Home Loan Mortg. Corp*. 2016 WL 5864509  (4th Cir. 2016)

2

The question thus presented is whether the White Firm and the Substitute Trustees, who regularly pursue foreclosure on behalf of creditors, were acting as "debt collectors," as that term is defined by §1692a(6), when they pursued foreclosure against McCray after she defaulted on her loan. [...] The FDCPA's definition of debt collector, however, does not include any requirement that a debt collector be engaged in an activity by which it makes a "demand for payment," as the White Firm and the Substitute Trustees claim. They argue that the notice letters and papers they used to initiate foreclosure proceedings were somehow to be distinguished from letters amounting to actual debt collection efforts, maintaining that foreclosure papers are not an attempt to collect a debt unless, as the district court explained, they contain an "express demand for payment or specific information about her debt." (Internal quotation marks and citation omitted). As we have previously explained, however, "nothing in [the] language [of the FDCPA] <u>requires</u> that a debt collector's misrepresentation [or other violative actions] be made as part of an <u>express demand for payment</u> or even as part of an action designed to induce the debtor to pay." Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 123 (4th Cir. 2014) (second emphasis added). To the contrary, we concluded that, "to be actionable under . . . the FDCPA, a debt collector needs only to have used a prohibited practice '<u>in connection with</u> the collection of any debt' or in an '<u>attempt</u> to collect any debt.'" (emphasis in original)

*Kaltenbach v. Richards*, 464 F.3d 524 (5th. Cir. 2006)

We therefore turn to the question of whether Richards is subject to §1692g if he satisfies the general definition of a debt collector, even though he was merely enforcing a security interest in his dealings with Kaltenbach. An interpretation given to the FDCPA by the FTC, the administrative agency responsible for enforcement of the statute, suggests that the entire FDCPA can apply to parties whose principal business is enforcing security interests and also meet §1692a(6)'s general definition of a debt collector. […] Because we find the statute ambiguous on this issue and the FTC's interpretation reasonable, we defer to the agency's construction and hold that the entire FDCPA can apply to a party whose principal business is enforcing security interests but who nevertheless fits §1692a(6)'s general definition of a debt collector. It might still be argued that even if he met the general definition of a debt collector, Richards did not need to comply with §1692g because in his specific interactions with Kaltenbach, he was enforcing a security interests rather than collecting a debt. To so hold, we would have to conclude that §1692f(6) is the only section of the FDCPA that regulates the enforcement of security interests. The statute itself demonstrates that not to be the case. […] Under [§1692a(6)], a party's general, not specific, debt collection activities are determinative of whether they meet the statutory definition of a debt collector. *See* 15 U.S.C. §1692a(6) ("who regularly collects or attempts to collect"). […] We therefore hold that a party who satisfies §1692a(6)'s general definition of

3

a "debt collector" is a debt collector for the purposes of the entire FDCPA even when enforcing security interests.

*Glazer v. Chase Home Fin. LLC*, 704 F.3d 453 (6th Cir.2013)

"To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings." *Black's Law Dictionary* 263 (6th ed.1990). The Supreme Court relied on this passage when it declared the following in a case concerning the Act's definition of "debt collector": "In ordinary English, a lawyer who regularly tries *to obtain payment* of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts." *Heintz,* 514 U.S. at 294, 115 S.Ct. 1489 (emphasis added). Thus, if a purpose of an activity taken in relation to a debt is to "obtain payment" of the debt, the activity is properly considered debt collection. Nothing in this approach prevents mortgage foreclosure activity from constituting debt collection under the Act. […] In fact, *every* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion ( *i.e.,* forcing a settlement) or compulsion ( *i.e.,* obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt).

*Reese v. Ellis, Painter, Ratterree & Adams* 678 F.3d 1211 (11th Cir. 2012)

The rule the Ellis law firm asks us to adopt would exempt from the provisions of §1692e any communication that attempts to enforce a security interest regardless of whether it also attempts to collect the underlying debt. That rule would create a loophole in the FDCPA. A big one. In every case involving a secured debt, the proposed rule would allow the party demanding payment on the underlying debt to dodge the dictates of §1692e by giving notice of foreclosure on the secured interest. The practical result would be that the Act would apply only to efforts to collect unsecured debts. So long as a debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA. That can't be right. It isn't. A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. A debt is still a "debt" even if it is secured.

## II. FACTUAL BACKGROUND

This case arises out of a $548,000 promissory note for the benefit of Countrywide Bank, FSB, secured by a deed of trust. (Supplemental Excerpts of Record [SER] 384-85) After Ms. Ho defaulted, an unknown note holder

4

accelerated the obligation and referred her loan to Countrywide Home Loans Servicing LP [CHLS], ReconTrust Company N.A. [Recon], and LandSafe Title Corporation [LandSafe] for foreclosure.

*A. The inflated debt Recon sought to collect*

On 26 February 2009 CHLS mailed to Ms. Ho a monthly statement identifying her overdue balance as $15,331.00 plus $60.00 in fees. (SER 108, Additional Excerpts of Record [AER] 35-37) According to the statement, on 1 March 2009 $3,066.20 in principal and interest and $919.28 in "outstanding late charges" would be added to the overdue balance. In the absence of payment, on 16 March 2009 an additional late charge of $153.31 would be added, resulting in a total balance due on that date of $19,529.79. *Id.*

On 26 March 2009 Recon, through its agent LandSafe, recorded and mailed to Ms. Ho a notice of default which asserted that Ms. Ho failed to pay $22,782.68, representing the "installment of principal and interest which has become due on 10/01/2008 and all subsequent installments of principal and interest, together with all late charges; *plus advances made and costs incurred by the beneficiary including foreclosure fees and costs and/or attorneys fees.*" (emphasis added) (SER 453). In the notice of default Recon had thus inflated the debt it sought to collect from Ms. Ho by $3,252.89.

On 3 July 2009 Recon recorded a Notice of Trustee Sale ['NOTS']. In the NOTS Recon stated that it is "a debt collector attempting to collect a debt" and notified Ms. Ho that her property would be sold to pay a debt of $592,419.88. (SER 73, ER 456). On 24 August 2009 CHLS sent Ms. Ho a modification agreement which calculated her debt, as of 1 October 2009, to be $584,888.97, representing the "past due principal payments, interest, fees and/or other costs

5

capitalized to date." (AER 64-69) In the NOTS Recon had thus inflated the debt it sought to collect from the proceeds of the sale by at least $7,530.91. *Id*.

### B. Ms. Ho's factual allegations

In her complaint Ms. Ho asserts that Recon is an affiliate of Countrywide Home Loans Inc. and a subsidiary of Bank of America "engaged in the business of Trust corporation and debt collector." (SER 406 ¶¶11-12) Ms. Ho alleges that Recon "regularly collect[s] debts as part of its ongoing operations and business" and "is engaged in the business of collecting debts for the main defendant." *Id*. Ms. Ho asserts that Recon is attempting to collect debts that are not owed, including "fraudulent escrow amounts", "false foreclosure fees", "incorrect, misleading, erroneous amounts", and "inflated self serving amounts" fabricated by Defendants and not authorized by plaintiff, law, or the mortgage instrument purporting to create the debt. (SER 60-61; 406 et seq., ¶¶9, 16, 18, 22, 24, 25, 27, 43-44).

## III. ARGUMENT

### A. Under §1692a(6) Recon is categorically a 'debt collector' subject to liability for violation of any substantive provision of the FDCPA.

The FDCPA defines the terms 'creditor' [§1692a(4)] and 'debt collector' [§1692a(6)] and then exempts from liability under the Act six specific categories of actors. [§1692a(6)(A)-(F)]. The majority did not find that Recon is covered by any of the six enumerated FDCPA exceptions. Yet, despite the unambiguous language of §1692a(6), the majority in essence held that if an entity self-identifies as 'a trustee' or 'an enforcer of a security interest' it benefits from an implied *per se* exclusion from coverage of the FDCPA notwithstanding the regularity of its

6

collection practices. (Dec.13-15) The majority's ruling turns a blind eye to the language, context, and purpose of the FDCPA.

> Section 1692a(6) provides in pertinent part that:
> The term "debt collector" means *any person* who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another*. […] For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. (emphasis added)

Ms. Ho asserted in her complaint that Recon "regularly collects debts as part of its ongoing operations and business" and "is engaged in the business of collecting debts for the main defendant [Bank of America]." (SER 406 ¶¶11-12) If proven, these factual allegations would place Recon squarely within the second definition of debt collector: those who regularly collect debt for others.

The use of the term 'any person' and the inclusion of two alternative broad formulations of who is a debt collector -- based on either the nature of the entity's principal business or the regularity of the entity's debt collection activities -- contradicts the majority's restrictive interpretation of §1692a(6). Had Congress wished to inoculate 'enforcers of security interests' from the Act's coverage it would have used plain English to do so. Absent such an exception, §1692a(6) is most naturally read to cover any entity that regularly collects or attempts to collect debts, secured or unsecured, that are owed another.

### B. Mortgage obligations are covered within the definition of 'debt' in section §1692a(5).

The majority asserts that "[f]or the purposes of the FDCPA, the word 'debt' is synonymous with 'money' 15. U.S.C. §1692a(5)." (Dec. At 8). The majority also asserts that "[d]ebt is defined as an 'obligation…of a consumer to pay

7

money.' §1692a(5)." *Id*.[1] The majority concludes: "Thus, ReconTrust would only be liable if it attempted to collect money from Ho. And this it did not do, directly or otherwise. " *Id*. The majority's understanding of 'debt' cannot be squared with the clear language of the Act.

*First*, §1692a(5) is couched in the broadest possible terms: it covers "any obligation or alleged obligation" thus providing protection to both debtors and improperly dunned non-debtors. *Second*, Congress chose not to define 'debt' as 'money owed': Congress tied coverage of the Act to any obligation "*arising out of a transaction* in which the *money, property, insurance or services* which are the subject of the transaction are primarily for personal, family, or household purposes." (emphasis added.) Ms. Ho's debt clearly arose out of a mortgage transaction in which she pledged her primary residence as collateral for obtaining a loan. *Third*, Congress specifically provided that covered debt remains within the scope of the act "whether or not such obligation has been reduced to judgment." *Id.*

According to the substantive provisions of the Act, debt collection activities involve far more than making demands for money. *See* 15 U.S.C. §1692d,e,f; s*ee also Dada v. Mukasey*, 554 U. S. 1, 13 (2008)("In reading a statute we must not look merely to a particular clause, but consider in connection with it the whole statute…" (internal quotation marks omitted)). No language in the Act requires that a debt collector make an express demand for payment to a debtor or conditions application of the Act only to those actions designed to induce the debtor to pay a debt. *See Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 385 (7th Cir.2010) (noting "that a communication need not make an explicit demand

---

[1] The majority's curious interpretation of the statute thus yields the awkward proposition that money is an obligation of a consumer to pay money.

for payment in order to fall within the FDCPA's scope"). Rather, to be actionable under the FDCPA, a debt collector need only engage in a prohibited practice *in connection with* the collection of any debt or in an attempt to collect any debt, a standard significantly broader than that employed by the majority.

### C. Foreclosing on a mortgage is conduct in connection with the collection of a debt.

Plaintiff's FDCPA claims are based on Recon's attempts to collect fabricated, impermissible, or incorrect amounts and to liquidate the collateral to satisfy an inflated debt not owed to the alleged beneficiary. (SER 453-56)

The majority held that because "[t]he object of a non-judicial foreclosure is to retake and resell the security, not to collect money from the borrower[…] actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA." (Dec. at 9) The majority's holding displays a profound misunderstanding of the California non-judicial foreclosure process.

> *(1)  California non-judicial foreclosure is an effort and/or a means to collect the underlying debt.*

As the California Supreme Court explained, a mortgage involves two documents, a promissory note and a security instrument: "The security instrument secures the promissory note. This instrument 'entitles the lender to reach some asset of the debtor if the note is not paid.'" *See Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226. Under California law a security interest cannot exist without an underlying obligation. *See Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 606; *see also* Civ. Code 2909, 2910. California's "elaborate and interrelated set of foreclosure and antideficiency statutes" thus regulate not the enforcement of security interests *per se* but "*the enforcement of obligations secured by interests in*

9

*real property*" such that under California law, there is only "'one form of action' for the recovery of any debt or the enforcement of any right secured by a mortgage or deed of trust. That action is foreclosure, which may be either judicial or nonjudicial." *See Rothwell,* 10 Cal.4th at 1236 (emphasis added).

Contrary to the majority's view, a trustee under a deed of trust cannot "retake" the property as would a repo man on behalf of a vehicle's title holder; rather, when the trustor defaults under the loan, the *creditor* may, among separate and independent remedies, elect to collect the debt secured by the deed of trust by invoking the power of sale provided in the deed of trust. (Dec. at 8); *Cf.* Civ Code 2924(a). Only then can the trustee exercise the power of sale by recording a notice of default and a notice of sale, and, unless the debtor reinstates the loan, auction the property to the highest bidder. *See Yvanova v. New Century Mortgage* (2016) 62 Cal. 4th 919 ("The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security.")[2]

> (2) *Recon's Notice of Default and the NOTS are 'communications' in connection with the collection of a debt and/or a means to collect a debt.*

California law requires all trustees to record and mail to the debtor a notice of default and a NOTS. Nothing in the FDCPA, however, suggests that notices required by state or federal statutes are exempt from the scope of the Act or that

---

[2] Other state supreme courts have also found that foreclosure is but one means to collect the underlying debt. *See Pratt v. Pratt, 1*21 Wash. 298 (Wash. 1922) (*"*An action to foreclose a mortgage or deed of trust is simply, in effect, an action to collect a debt, to secure the payment of which was the sole purpose of its execution."); *Shapiro & Meinhold v. Zartman,* 823 P.2d 120, 124 (Colo.1992) (The Colorado non-judicial foreclosure "is a method of collecting a debt by acquiring and selling secured property to satisfy a debt."); *Alaska Tr., LLC v. Ambridge,* 372 P3d 207 (Alaska 2016) ("foreclosing on property, selling it, and applying the proceeds to the underlying indebtedness constitute one way of collecting a debt — if not directly at least indirectly"); *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85 (Ohio 2016)( "The foreclosure proceeding is the enforcement of a debt obligation.")

persons recording, mailing, or serving such statutorily required notices are exempt from the definition of 'debt collector'.

To the contrary: §1692a(2), several of the substantive provisions of the FDCPA, and the Act's legislative history discredit any such conclusion. *First*, the Act defines 'communication' as the "conveying of information regarding a debt directly or indirectly to any person through any medium." (§1692(a)(2)). Here, the notice of default conveyed to Ms. Ho and the public at large the following information: (1) Ms. Ho defaulted on her mortgage loan; (2) the date and the amount due and owing; (3) the actions Ms. Ho must take to cure the default and reinstate the loan; and (4) the consequences for not paying the amount requested. The NOTS further conveyed to Ms. Ho that (1) Recon is "a debt collector attempting to collect a debt"; (2) the total amount of the unpaid balance of the debt with interest, additional expenses, and fees; and (3) the date on which the property would be sold to "satisfy the indebtedness secured" by said property. Both notices are incontrovertibly 'communications' as defined by §1692a(2).

*Second*, the notices unambiguously express that the information is conveyed *in connection with* the collection of the debt placed with Recon:

> the present beneficiary under such deed of trust has executed and delivered to [Recon] a written declaration of Default and Demand for sale … and has declared and does hereby declares all sums secured thereby immediately due and payable and has elected … to cause the trust property to be sold to satisfy the obligations secured thereby. (SER 453)

*Third*, Congressional Amendments confirm that all communications, unless specifically exempted, are covered by the Act. In 1996, shortly after *Heintz,* Congress amended §1692e(11) to exclude from its reach "a formal pleading made in connection with a legal action." *See* Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, §2305(a), 110 Stat. 3009 (1996). In 2006 Congress again

11

amended the FDCPA to provide that under section 1692g(a) a "communication in the form of a formal pleading in a civil action shall not be treated as an initial communication" subject to the FDCPA's requirements for notice regarding the process for disputing debts. *See* Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109351, §802(a), 120 Stat. 1966. "'[W]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.'" *See Hillman v. Maretta*, 133 S. Ct. 1943, 1953 (2013).

### D. Adherence to federalism canon cannot abrogate Congressional enactment of federal minimum standards in the field of debt collection.

The FDCPA falls squarely within Congress's authority "to regulate those activities having a substantial relation to interstate commerce." *See Lopez v. United States*, 514 U.S. 549, 558-59 (1995). Congress enacted the FDCPA because it found that existing laws and procedures were inadequate to protect consumers from serious and widespread debt collection abuses. *See* 15 U.S.C. §1692(b). Section 1692(e) is anything but ambiguous: "[I[t is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors […] and to promote consistent State action to protect consumers against debt collection abuses." *See* 15 U.S.C. §1692(e); *see also Jerman*, 559 U.S. at 577. The Act contemplates that the FDCPA and state debt collection laws would work in concert to protect consumers: the FDCPA preempts any state law to the extent it is "inconsistent" with the FDCPA, but where a state's debt collection law is more protective of consumers, both the state's law and the FDCPA apply. *See* 15 U.S.C. §1692n.

12

The majority did not address either section 1692(e) or 1692n. The majority appears to have found that the Act exceeds Congress's powers as applied to foreclosure trustees because "there is little doubt that foreclosure is a traditional area of state concern." (Dec. at 17) The majority found that it would be inconsistent with the Supreme Court's "strong fidelity to the 'federalism canon'" to permit adherence to state statutory requirements to result in liability under the FDCPA. (Dec. at 15)

The majority's reasoning is unsound, without legal support, and already twice rejected by the Supreme Court. *First*, the Supreme Court has repeatedly rejected the notion that the Constitution prohibits Congress from regulating activities otherwise falling within the Commerce Power simply because they touch upon matters of traditional state jurisdiction. *See Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 546 (1985) (rejecting "as unsound in principle and unworkable in practice, a rule of state immunity from federal regulation that turns on a judicial appraisal of whether a particular governmental function is 'integral' or 'traditional'"); *Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975) (recognizing states' traditional role in regulating the legal profession, but declining to construe the Sherman Act to exclude coverage of state bar associations.)

*Second*, unlike in *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016), the case at bar presents no attack on California's sovereign rights to "'the structure of [its] government [… ] and the character of those who exercise government authority.' " *See* Brief of Michigan et al. as Amici Curie at 1. A non-judicial foreclosure under California law is a private transaction with no oversight by a court or other government actor: "[n]either appraisal nor judicial determination of fair value is

13

required,' and the debtor has no postsale right of redemption." *See Alliance,* 10 Cal.4th at 1236.

*Third*, the Supreme Court has twice rejected the import of overblown consequences that may result from the application of the FDCPA to activities heavily regulated by state statutes. In *Heintz* a bank's law firm brought a collections action against a consumer to recover on an automobile loan. *See Heintz*, 514 U.S. at 294. The plaintiff filed an FDCPA claim asserting that the letter sent by the bank's attorney contained an inaccurate statement of the debt. *Id*. Refusing to imply an exception from the coverage of the Act for "those debt-collecting activities of lawyers that consist of litigating," the Court rejected the exact grave concerns raised by the majority in this case:

> For example, Heintz's strongest "anomaly" argument focuses upon the Act's provisions governing "[c]ommunication in connection with debt collection." 1692c. One of those provisions requires a "debt collector" not to "communicate further" with a consumer who "notifies" the "debt collector" that he or she "refuses to pay" or wishes the debt collector to "cease further communication." 1692c(c). In light of this provision, asks Heintz, how can an attorney file a lawsuit against (and thereby communicate with) a nonconsenting consumer or file a motion for summary judgment against that consumer?
> We agree with Heintz that it would be odd if the Act empowered a debt-owing consumer to stop the "communications" inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt. But, it is not necessary to read §1692c(c) in that way—if only because that provision has exceptions that permit communications "to notify the consumer that the debt collector or creditor may invoke" or "intends to invoke" a "specified remedy" (of a kind "ordinarily invoked by [the] debt collector or creditor"). §§1692c(c)(2), (3). […] We need not authoritatively interpret the Act's conduct-regulating provisions now, however. Rather, we rest our conclusions upon the fact that it is easier to read §1692c(c) as containing some such additional, implicit, exception than to believe that Congress intended, silently and implicitly, to create a far broader exception, for all litigating attorneys, from the Act itself. *Id.*

The Court returned to the same issue in *Jerman*, 130 S.Ct. 1605. The plaintiff in *Jerman* alleged that a law firm violated the FDCPA by stating in a notice attached

14

to a foreclosure complaint that the borrower's debt would be assumed valid unless she disputed it in writing. *Id* at 1610. The Court rejected the same policy arguments and accusations of "unworkable consequences" :

> In sum, we do not foresee that our decision today will place unmanageable burdens on lawyers practicing in the debt collection industry. To the extent debt collecting lawyers face liability for mistaken interpretations of the requirements of the FDCPA, Carlisle, its amici, and the dissent have not shown that "the result [will be] so absurd as to warrant" disregarding the weight of textual authority discussed above. Heintz, 514 U.S., at 295. Absent such a showing, arguments that the Act strikes an undesirable balance in assigning the risks of legal misinterpretation are properly addressed to Congress. […] This Court may not, however, read more into §1692k(c) than the statutory language naturally supports. *Id*.

If, as the United States Supreme Court has held, the FDCPA regulates an attorney's letter to opposing counsel attempting a settlement and notices attached to a foreclosure complaint, it is hard to fathom how the very same activities performed by a non-lawyer in this Circuit could be categorically excluded from coverage of the Act.

## IV. FED. R. APP. P. RULE 40 STATEMENT

Petitioner believes that the majority overlooked the material points of fact and law stated above and thus created an unnecessary circuit split. *See Rivera v. Cnty. of L. A.*, 745 F.3d 384 (9th Cir., 2014) (declining to create a circuit split based on concerns about "unsound policy,"); *Kelton Arms Condominium Owners v. Homestead Ins.*, 346 F.3d 1190 (9th Cir., 2003)(declining to create a circuit split for procedural rules); *Bailey v. Hill*, 599 F.3d 976 (9th Cir., 2010)(declining to create a circuit split "by interpreting 2254(a) in a non-literal manner").

## V. CONCLUSION

Wherefore Ms. Ho respectfully requests that the Court grant rehearing *en banc*.

15

>Respectfully submitted by
>LAW OFFICES OF LARRY R. GLAZER
>\_\_\_s/ Nicolette Glazer_____
>Nicolette Glazer Esq.

## CERTIFICATION OF COMPLIANCE WITH CIRCUIT RULE 32

The undersigned attorney certifies that the body of this petition is within the page limitation for Petitions under Rule 35 and Rule 40.

>LAW OFFICES OF LARRY R. GLAZER
>\_\_\_\_\_s/ Nicolette Glazer_____
>Nicolette Glazer Esq.

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 18th day of December 2016 this petition was submitted for filing and service via the ECF system on all registrants entitled to notice.

>LAW OFFICES OF LARRY R. GLAZER
>\_\_\_\_\_s/ Nicolette Glazer_____
>Nicolette Glazer Esq.